# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA PALMERI,<br><br>*Plaintiff,*<br><br>v.<br><br>HILLTOP SECURITIES, INC., et al.,<br><br>*Defendants.* | Civil Action No.:<br>3:22-cv-05588-PGS-RLS<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants Hilltop Securities, Inc. and Brad Winges' (together, the "Moving Defendants") Motion to Dismiss and Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (ECF No. 5).[1] Plaintiff Lisa Palmeri ("Plaintiff") opposed the motion and filed a Cross-Motion for Leave to Amend the Complaint (ECF No. 10). The Court granted Plaintiff's cross-motion to amend (ECF No. 16), and on June 5, 2023, Plaintiff filed a Verified Amended Complaint. (ECF No. 17). Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decides the motion without oral argument.

---

[1] Defendant Hilltop Holdings has not joined the motion and instead asserts that Plaintiff improperly brought claims against it because it is the parent company of Hilltop Securities and it never employed Plaintiff. Additionally, Hilltop Holdings asserts that it has not been properly served with process pursuant to Fed. R. Civ. P. 4.

1

# I.

The facts herein are derived from Plaintiff's Verified Amended Complaint (ECF No. 17) and the Declaration of Melinda Fleming, Hilltop Securities' Senior Vice President and Director of Human Resources. (ECF No. 5-2).

A. Plaintiff's Employment

Plaintiff, a licensed securities broker, began her employment with Hilltop Securities, Inc., ("Hilltop Securities") in 1993. (Am. Compl. ¶¶ 25-26, ECF No. 17). In her role as the Managing Director of the Stock Loan Department, Plaintiff "ran a profitable stock loan division, managed about 70 accounts, and supervised approximately ten employees . . . ." (*Id.* at ¶ 28). She never had performance issues, and her licensing had no disclosures or customer complaints. (*Id.* at ¶ 30).

In January 2020, Brad Winges ("Winges") became CEO of Hilltop Securities and Plaintiff's supervisor. (*Id.* at ¶ 35). Plaintiff asserts Winges engaged in a pattern of harassment based on her sex and treated her poorly by excluding her from meetings, disparaging her performance and ostracizing her while treating male subordinates more favorably. (*Id.* at ¶ 38). Plaintiff complained of Winges' conduct to Lana Calton, the Head of Clearing, and Anton Berends, the Head of Stock Loan. (*Id.* at ¶ 41).

On August 10, 2021, Human Resources sent an email advertising a registered securities personnel position. (*Id.* at ¶ 43). The description fit Plaintiff's role. (*Id.*).

Shortly thereafter, Winges invited Plaintiff to attend dinner with him and Ms. Calton. (*Id.* at ¶ 42). At that dinner, Winges attacked Plaintiff's performance and criticized her "for not being a 'good manager' and for not 'growing the business.'" (*Id.* at ¶ 45). Despite those attacks, Plaintiff's "stock loan Profit & Loss . . . was at its maximum allocation to meet Hilltop's current licensing capital requirements, which meant [she] could not increase her stock loan business by offering stock loan services to new customers without an influx of capital." (*Id.* at ¶ 46). Plaintiff further asserts that at mid-year in 2021, her performance was up 62% from the prior year. (*Id.* at ¶ 47). Eventually, Plaintiff learned that she was being replaced with a younger, less qualified male. (*Id.* at ¶ 48). Winges demanded that Plaintiff train her replacement and then separate from Hilltop Securities thereafter. (*Id.* at ¶ 49). If she did not do as he directed, Winges threatened to "permanently mark[]" Plaintiff's Form U4, as he had done to another employee. (*Id.* at ¶¶ 51-52).

On August 19, 2021, Plaintiff advised Hilltop Securities of her "forced resignation," citing inappropriate and unwarranted comments by Winges. (*Id.* at ¶ 55-56). On or about June 11, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging sexual harassment discrimination and retaliation. (*Id.* at ¶¶ 61-62; Ex. 1). On August 17, 2022, Plaintiff filed suit against all defendants in the Superior Court of New Jersey. (*Id.* at ¶ 1). Defendants timely removed the action. (ECF No. 1).

3

Plaintiff alleges Winges discriminated against her and created a hostile work environment on the basis of her sex by ignoring her, excluding her from work meetings, refusing to invest in her stock loan division, refusing to accommodate her remote work schedule and retaliating against her for insisting on equal terms and conditions of those compared to her male counterparts and for engaging in a protected activity. (*Id.* at ¶ 65). Plaintiff also asserts age discrimination on the basis that Winges treated male employees more favorably compared to Plaintiff." (*Id.* at ¶ 73). After complaining, Plaintiff alleges Defendants retaliated against her by subjecting her to a hostile work environment. (*Id.* at ¶ 77). Plaintiff's claims against Hilltop Securities and Hilltop Holdings are based on theories of *respondeat superior* and vicarious or strict liability.

B. The Arbitration Agreement

In 2020, Hilltop Securities requested that certain "key employees," including Plaintiff, execute a Dispute Resolution and Arbitration Agreement. (Fleming Decl. ¶¶ 18-19, ECF No. 5-2). On or about January 27, 2020, Plaintiff accessed the software platform used by Hilltop Securities to execute the employment-related agreements. Plaintiff reviewed a PowerPoint program called "Dispute Resolution and Arbitration Agreement," which required her to view and sign a Dispute Resolution and Arbitration Agreement (the "Arbitration Agreement"). (*Id.* at ¶¶ 12-13, 20-21; Ex. 3). The Arbitration Agreement states, in relevant part:

4

> Any and all Covered Disputes (defined below) with Hilltop Securities Inc. (the "Company") shall first be addressed through good faith negotiation. If the Covered Dispute cannot be settled through negotiation, you and the Company waive your respective right to trial by jury or before a judge in a court of law and agree that the Covered Dispute will be resolved exclusively through final and binding arbitration in accordance with the terms, conditions and procedures of this Dispute Resolution and Arbitration Agreement ("Agreement") and the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Procedure for Industry Dispute . . . .

(*Id.* at ¶¶ 22, 31; Ex. 1, 1). "Covered Dispute" is defined to include, among other things, "claims related to, or arising out of, the employment relationship," "an allegation that any adverse employment action was based on discrimination or harassment because of your race, color, gender, sexual orientation, gender identity, age," and "an allegation that you were constructively discharged, wrongfully terminated, or retaliated against for engaging in protected activity." (*Id.* at ¶ 32; Ex. 1, 1). The PowerPoint contained an acknowledgment provision, which confirmed that the Arbitration Agreement had been received, read and understood. Plaintiff clicked a box indicating her voluntary acceptance to the terms. (*Id.* at ¶ 24; Ex. 3).

## II.

The Moving Defendants seek to dismiss the action and compel arbitration pursuant to the Dispute Resolution and Arbitration Agreement, the rules of the Financial Industry Regulatory Authority ("FINRA") and federal and state laws favoring the enforcement of arbitration agreements in employment disputes. Plaintiff

5

opposes the motion on the ground that the newly enacted Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26, removes the federal preemption on the New Jersey Law Against Discrimination, which in turn bars pre-dispute arbitration of claims for discrimination, retaliation or harassment. Plaintiff also asserts bad faith, fraud in the inducement, and lack of consideration in the execution of the Arbitration Agreement.

The Court has original jurisdiction pursuant to 28 U.S.C. § 1332. "[B]efore compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted). "Because arbitration is a matter of contract between the parties, a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (internal quotation marks and citation omitted). A court may enforce a contract to arbitrate if the court is satisfied that the making of the contract is not in issue. *Id.* While the FAA "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration . . . this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis*, 560 F.3d at 160 (internal quotation marks and citation omitted).

6

Two standards of review exist on a motion that seeks to compel arbitration – review akin to a Rule 12(b)(6) motion to dismiss or review akin to a Rule 56 motion for summary judgment. *Guidotti*, 716 F.3d. at 776. Review under the Rule 12(b)(6) standard is appropriate if "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause . . . ." *Id.* (internal quotations omitted). However, review under the Rule 56 standard is appropriate "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue . . . ." *Id.* "The centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs, Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774-76).

Here, the arbitration agreement is not attached as an exhibit to Plaintiff's Amended Complaint. In fact, the Amended Complaint contains absolutely no mention or reference to the agreement or an arbitration clause. *See Hosang v. Midland Credit Mgmt., Inc.*, No. CV19-21740 (BRM/JAD), 2020 WL 8366284, at *3 (D.N.J. Dec. 15, 2020), report and recommendation adopted, No. CV2:19-21740 (BRM/JAD), 2021 WL 307544 (D.N.J. Jan. 29, 2021) (reviewing the materials contained or incorporated in the complaint and not those attached to the motion

7

papers). The first instance in which the arbitration agreement was raised was in the Moving Defendants' Motion to Dismiss and Compel Arbitration. Moreover, Plaintiff has placed the validity of the agreement to arbitrate in issue by arguing in opposition that Defendants engaged in fraud and bad faith by inducing Plaintiff to enter into the Arbitration Agreement shortly after she complained of discrimination.

Under controlling Third Circuit precedent, the Court is obligated to deny the pending motion for the purpose of allowing limited discovery to be taken on the question of arbitrability. *See Madlinger v. Midland Credit Mgmt., Inc.*, No. CV19-21183 (MAS/TJB), 2020 WL 7640918, at *3 (D.N.J. Dec. 23, 2020). *Hejamadi v. Midland Funding, LLC*, No. CV1813203KSHCLW, 2019 WL 4855624, at *3 (D.N.J. Oct. 2, 2019). The parties should confer with the Magistrate Judge and set a limited period of discovery concerning the arbitration agreement. Thereafter, the motion to dismiss and compel arbitration may be renewed.

## ORDER

Having carefully reviewed the submissions of the parties, and for good cause shown:

**IT IS** on this 1st day of August, 2023,

**ORDERED** that Defendants Hilltop Securities, Inc. and Brad Winges' Motion to Dismiss and Compel Arbitration (ECF No. 5) is **DENIED WITHOUT PREJUDICE**; and it is further

8

**ORDERED** that a limited period of discovery shall be initially conducted on the arbitration agreement and overseen by Magistrate Judge Singh in accordance with her schedule; and

**ORDERED** that Plaintiff may apply to Magistrate Judge Singh for leave to amend proof of service upon Defendant Hilltop Holdings.

_____
PETER G. SHERIDAN, U.S.D.J.