UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA PALMERI,<br><br>    Plaintiff,<br><br>v.<br><br>HILLTOP SECURITIES, INC., et al.,<br><br>    Defendants. | Civil Action No. 22-5588 (ZNQ) (RLS)<br><br>**MEMORANDUM OPINION AND ORDER** |

SINGH, United States Magistrate Judge.

**PRESENTLY** before the Court are the parties' respective Motion and Cross-Motion regarding Plaintiff Lisa Palmeri's ("Plaintiff's") request to depose Brad Winges ("Winges"), the Chief Executive Officer ("CEO") of Defendant Hilltop Securities, Inc. ("HTS") and for other written discovery, in connection with the Court's September 14, 2023 Order permitting discovery limited to the parties' arbitration agreements. (*See* Doc. Nos. 37-41, 47). Defendants HTS, Hilltop Holdings, and Winges (collectively, "Defendants") move the Court for the entry of a protective order precluding the deposition, which Plaintiff opposes. Plaintiff cross-moves the Court to compel Winges's deposition and the supplementation of certain discovery responses, which Defendants oppose. With leave of Court, Plaintiff has replied to Defendants' opposition on the Cross-Motion to compel. (*See* Doc. No. 45, 47).

The Court has fully reviewed the submissions of the parties and considers the same without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).[1] For

---

[1] The parties originally raised the dispute subject to the pending Motion and Cross-Motion informally pursuant to Local Civil Rule 37.1. During a hearing to address the informal discovery

1

the reasons set forth below, and for good cause shown, the Court **GRANTS** Defendants' Motion for the entry of a protective order, **GRANTS in part** Plaintiff's Cross-Motion only to compel supplementation of Defendants' Response to Interrogatory Number 4, and **DENIES in part** Plaintiff's Cross-Motion as to her other requests.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The parties are familiar with the background of this matter, so the Court only sets forth herein that background and procedural history relevant to the pending Motion and Cross-Motion. This action arises out of Plaintiff's employment with HTS as a licensed securities broker, which began in 1993. (*See* Doc. No. 17). In February 2019, Winges became CEO of HTS and supervised Plaintiff.[2] Plaintiff alleges that, thereafter, she was subjected to harassment, discrimination, a hostile work environment, retaliation, and other wrongful conduct. (*See generally* Doc. No. 17). On March 13, 2019, Plaintiff executed a Dispute Resolution and Arbitration Agreement.[3] (Doc. No. 37-7 at ¶¶ 9, 14-15, Ex. G; *see also* Doc. No. 38-2 at p. 1). On January 27, 2020, Plaintiff signed another arbitration agreement with HTS. (Doc. No. 37-7 at ¶ 21, Ex. J).

---

dispute, counsel for Defendants requested to brief the disputes through a formal motion, which the Court granted. (*See* Doc. Nos. 32-36).

[2] Plaintiff alleges in her Amended Verified Complaint that Winges became CEO and her supervisor in January 2020. (Doc. No. 17 at ¶ 35). However, in connection with the pending Motion and Cross-Motion, Defendants have proffered a Declaration from Winges. (Doc. No. 40-2). In that Declaration, Winges declares that he "became the CEO of HTS in or around February 2019." (Doc. No. 40-2 at ¶ 1). In her Declaration, Melinda Fleming also avers that Winges became CEO of HTS in or around February 2019. (Doc. No. 37-7 at ¶ 24). Further, Plaintiff's brief in support of her opposition to Defendants' Motion states that Winges became HTS's CEO and Plaintiff's supervisor in February 2019. (*See* Doc. No. 38-2 at p. 1). For purposes of the instant Motions, the Court assumes Winges assumed the CEO role at HTS in February 2019.

[3] In connection with the pending Motions, Defendants proffer that Plaintiff also signed an arbitration agreement in connection with her Financial Industry Regulatory Authority ("FINRA") Form U-4 dated September 24, 1992. (Doc. No. 37-7 at ¶¶ 9-11, Ex. A).

2

On August 17, 2022, Plaintiff filed her complaint in the Superior Court of New Jersey, which Defendants removed on September 16, 2022. (*See* Doc. No. 1). Defendants moved to dismiss Plaintiff's complaint and to compel arbitration pursuant to the arbitration agreement, (Doc. No. 5), and upon a motion for leave to amend, (Doc. Nos. 10, 16), Plaintiff filed an Amended Verified Complaint, (Doc. No. 17). Plaintiff thereafter opposed the motion to dismiss and to compel arbitration, to which Defendants replied. (*See* Doc. Nos. 18-19). On August 1, 2023, the Court denied without prejudice Defendants' motion to dismiss and instructed the parties to proceed with limited discovery on the question of arbitrability. (Doc. No. 20).

On the parties' agreement and request, the Court entered an Order on September 14, 2023, providing for limited discovery on the arbitrability issue and setting a schedule for such discovery. (*See* Doc. No. 23). Specifically, the Court permitted discovery as to:

> (a) when Plaintiff signed the arbitration agreement at issue; (b) the circumstances surrounding Plaintiff's execution of the arbitration agreement; (c) whether Plaintiff executed any prior agreements with arbitration provisions and the circumstances surrounding her execution of any prior agreements; [and] (d) the basis for Plaintiff's allegations of fraud or bad faith surrounding her execution of the arbitration agreement.

(Doc. No. 23 at pp. 1-2). In addition to limited written discovery, the Court, upon the parties' agreement, limited depositions to one per party as to "the anticipated factual issues regarding Plaintiff and Defendant's arbitration agreement at issue[.]" (Doc. No. 23 at p. 2).

Through the course of that limited discovery, Plaintiff sought the deposition of Winges, which Defendants opposed under the "apex doctrine" on the basis that he does not have sufficient personal knowledge as to the limited issues relating to the arbitration agreements. (*See* Doc. No. 30 and 30-1). Defendants offered to produce Melinda Fleming ("Fleming"), HTS's Senior Vice

3

President and Director of Human Resources, for a deposition,[4] which Plaintiff opposed. After raising the issue informally with the Court, the parties filed the instant Motion and Cross-Motion.

More specifically, Defendants seek the Court to preclude Plaintiff from deposing Winges in this limited discovery period. (*See* Doc. No. 37). Defendants argue that Plaintiff's request to depose Winges is outside the scope of the limited discovery relating to the arbitration agreements. In addition, Defendants contend that, because he is CEO of HTS, the Court should not permit his deposition because he lacks unique personal knowledge as to the arbitrability issues in dispute. Defendants further argue that the sought-after information could be obtained from another source, such as Fleming, who has personal knowledge of the arbitration agreements and their presentation to Plaintiff and others. Defendants add that Winges's deposition in this narrowed discovery phase would unduly burden him and also limit the information the parties will present to the Court in connection with any renewed motion to compel arbitration. In the alternative, Defendants seek the Court to permit any discovery from Winges to proceed by way of limited written interrogatories.

In their moving submissions, Defendants proffer a declaration from Fleming dated February 21, 2024, through which she avers to her personal knowledge of the arbitration agreements signed by Plaintiff, including those in 2019 and 2020. (*See* Doc. No. 37-7 at ¶ 6). Fleming states that, from May 2017 to May 2021, she was Senior Vice President and Director of Human Resources for Hilltop Holdings, Inc., and since May 2021, she has been Senior Vice President and Director of Human Resources for HTS. (Doc. No. 37-7 at ¶¶ 4-5). Fleming sets

---

[4] In support of their original motion to dismiss and compel arbitration, Defendants proffered a declaration from Fleming dated October 1, 2022. (Doc. No. 5-2).

4

forth in her declaration, and attaches thereto, the various arbitration agreements Plaintiffs signed. (*See* Doc. No. 37-7).

In relevant part, Fleming further declares that Winges "was not involved in the decision to roll out" the arbitration agreements in 2019 or 2020. (Doc. No. 37-7 at ¶ 23). According to Fleming, Winges "was still completing the on-boarding process" to become CEO "when the agreements were rolled out on February 28, 2019." (Doc. No. 37-7 at ¶ 24). Further, Fleming also avers that Winges "was not directly involved in the decision to require all employees to sign" the arbitration agreements in 2020 "or in the actual process of rolling out those arbitration agreements to employees." (Doc. No. 37-7 at ¶ 25). Rather, "Hilltop executives, Human Resource leaders, and legal counsel" made the decision to require employees to sign the arbitration agreement. (Doc. No. 37-7 at ¶ 26).

Plaintiff opposes Defendants' Motion and Cross-Moves to compel Winges's deposition and to compel Defendants to supplement responses to Plaintiff's Interrogatories and Requests to Produce. (*See* Doc. Nos. 38-39). As to Winges's deposition, Plaintiff argues that Winges must have personal knowledge of the arbitration agreements based on the close timing between him becoming CEO in February 2019 and the presentation of the arbitration agreement in March 2019, in combination with the alleged discriminatory conduct and singing of a second arbitration agreement in January 2020. (Doc. No. 38-2 at p. 1). More specifically, Plaintiff contends that Defendants have not met their burden in seeking the entry of a protective order for Winges's deposition and Winges has personal knowledge as to "Plaintiff's allegations of fraud and bad faith against *him* relating to the question of arbitrability[.]" (Doc. No. 38-2 at p. 9). Plaintiff argues that Fleming would not have the same personal information as to those allegations, particularly the timeline of Plaintiff's execution or events before May 2021, when Fleming took on her role at

5

HTS. Plaintiff also points out that Defendants failed to proffer any declaration from Winges as to his lack of personal knowledge in support of their Motion. Plaintiff further challenges the case law relied upon by Defendants as inapplicable and/or misconstrued.

In support of her Cross-Motion, Plaintiff argues that she is entitled to depose Winges during this phase of limited discovery. She argues that, by agreeing to produce one witness for deposition in this limited discovery phase, Defendants waived any objection to producing Winges for a deposition. Plaintiff adds that her complaint asserts allegations directly relating to his actions before and after she had been presented with the arbitration agreements. (*See* Doc. No. 38-2 at p. 15). She argues that, through deposing Winges, she seeks to discover the circumstances around the timing of the imposition of the arbitration agreements. Plaintiff believes Winges must have unique personal knowledge to support her contention that HTS procured her signature to the arbitration agreements through bad faith and/or fraudulent inducement. Plaintiff also argues that Fleming's declaration is insufficient to dispel the theory that Winges has personal knowledge of the arbitration agreements. In so arguing, she points out differences between the Fleming declaration filed with the earlier motion to compel arbitration and the one filed with the instant Motion. Plaintiff also cross-moves to compel supplementation of Defendants' responses to interrogatories and Requests for Documents. (*See* Doc. No. 38-2 at p. 19). More specifically, Plaintiff seeks to compel supplementations in response to: Plaintiff's Interrogatories Numbered 3-4, 6-8, 10-13, 15, and 17-19; and Plaintiff's First Notice to Produce Numbered 3, 6, 8-9, 11-12, 15, and 20.[5] (*See* Doc. No. 38-2 at pp. 19-25; Doc. No. 39-5).

---

[5] For the sake of brevity and because the parties are familiar with the record, the Court does not recite the specific discovery requests and objections thereto herein. Nevertheless, the Court has fully reviewed the requests and responses and objections thereto in consideration of the Cross-Motion.

Defendants filed a reply and opposition to the Cross-Motion. (*See* Doc. No. 40). Defendants again emphasize that Plaintiff has not shown either that Winges has personal or unique knowledge as to the arbitrability issues or that she cannot get such information from alternative sources. Defendants also proffer a Declaration from Winges, in which he avers that he "was not involved" in either HTS's decision to require certain employees to execute an arbitration agreement in March 2019 or the "roll out or presentation" of the agreement to any employee, including Plaintiff. (Doc. No. 40-2 at ¶ 3). He also affirms that he was not involved in the decision to require the signing of an arbitration agreement in January 2020, or its "roll out or presentation" to any employee, including Plaintiff. (Doc. No. 40-2 at ¶ 4). Winges adds that he lacks "personal knowledge of any facts relating to the limited categories of discovery outlined in the Court's September 14, 2023 Order[.]" (Doc. No. 40-2 at ¶ 5). Defendants thus argue that they are entitled to a protective order precluding Winges's deposition at this time. Defendants also oppose Plaintiff's Cross-Motion to Compel further responses to the Interrogatories and Requests to Produce. (*See* Doc. No. 40 at pp. 15-24). Defendants primarily argue that the contested discovery requests are outside of the scope of this limited discovery period, seeking discovery as to the underlying claims at issue.

In her sur-reply, Plaintiff reiterates that Winges must have personal knowledge and any deposition of Fleming would be insufficient. (*See* Doc. No. 47). She seeks the Court to disregard the Winges Declaration as being improperly raised in a reply brief. Plaintiff argues that, even if the Court were to consider it, the declaration is self-serving and does not address whether he was involved with the presentation of the arbitration agreements to Plaintiff in 2019 and 2020. She points out that the two Fleming declarations were contradictory in that, in the earlier one, Fleming avers that HTS required "key employees" to sign the arbitration agreements but, in the later

7

declaration, Fleming states that the company required all employees to sign the arbitration agreement.[6] (*See* Doc. No. 47 at p. 2, n.2). Plaintiff also contends that Winges's averment that he lacks knowledge of the roll-out of the arbitration agreement in January 2020 is belied by Defendants' interrogatory response that states that the decision to require the arbitration agreement was made by "all Hilltop executives, Human Resource leaders, and counsel." (Doc. No. 47-3 at ECF p. 8). Plaintiff further argues that Fleming does not have sufficient personal knowledge as to the arbitration agreements and the timing of their presentation, particularly because she did not take on her current role at HTS until May 2021.

## II.   LEGAL STANDARD

Parties, generally, may seek discovery regarding any nonprivileged matter that is both relevant to a claim or defense and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The information need not be admissible at the trial, *id.*, and the party seeking the discovery bears the burden of showing that the information sought is relevant, *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Whether information is relevant "depends on the facts of each case, and the determination of relevance is within the discretion of the Court." *Carchietta v. Russo*, No. 11-7587, 2014 WL 1789459, at *3 (D.N.J. May 6, 2014); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (recognizing the Court exercises wide discretion to limit discovery). The Court will limit discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C).

---

[6] In the Fleming Declaration proffered by Defendants in connection with their Motion, Fleming corrects her prior declaration to state that the 2020 arbitration agreement was presented to all HTS employees. (Doc. No. at ¶¶ 18-20).

On a motion for a protective order precluding certain discovery, the movant must show good cause based on a particular need for protection "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see Pearson v. Miller*, 211 F.3d 57, 72-23 (3d Cir. 2000); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (requiring that movant show a "particular need for protection"). On a motion to compel discovery, the movant bears the initial burden of showing the sought-after information is discoverable and relevant, and the responding party must then proffer support for their objections. Fed. R. Civ. P. 37(a); *see Hackensack Univ. Med. Ctr. v. Becerra*, No. 21-12233, 2022 WL 3500418, at *3 (D.N.J. Aug. 18, 2022); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

The resolution of the Motion and Cross-Motion lie within the Court's sound discretion. *See Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.").

## III. DISCUSSION

The Court considers first the issue regarding Winges's deposition in this limited phase of discovery and then, second, Plaintiff's motion to compel additional discovery responses to her Interrogatories and Requests to Produce.

### A. WINGES'S DEPOSITION

In light of the limited discovery permitted by the Court, Defendants rely upon the so-called apex doctrine in seeking a protective order that precludes Plaintiff from deposing Winges in this phase of discovery. Pursuant to the apex doctrine, courts in this Circuit presume that depositions of high-level corporate officers, such as Winges, pose a "severe burden" on the officers and their employer entities. *United States ex rel. Galmines v. Novartis Pharma. Corp.*, No. 06-3213, 2015 WL 4973626, at *1-2 (E.D. Pa. Aug. 20, 2015); *see also* Fed. R. Civ. P. 26(c). A party may rebut

the presumption of undue burden if the officer "has personal or unique knowledge" as to the relevant issues and the information cannot be sought "from lower-level employees or through less burdensome means[.]" *Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 2517133, at *3 (D.N.J. June 23, 2011); *accord Harapeti v. CBS Television Stations Inc.*, No. 21-15675, 2021 WL 8316391, at *2 (D.N.J. Dec. 1, 2021). While Plaintiff relies upon case law for the proposition that a witness cannot avoid deposition by stating that they lack personal knowledge, those cases do not address the apex doctrine and are outside of the context presented here where the Court has ordered limited discovery on specific arbitrability issues.

Applying the apex doctrine here, Plaintiff has failed to rebut the presumption of burden in the context of this limited discovery phase focused on the arbitrability issues.[7] Although Winges appears to have personal knowledge as to the underlying merits of Plaintiff's claims and is indeed a named defendant here, it appears mere speculation that Winges possesses personal or unique knowledge regarding the circumstances in which HTS presented an arbitration agreement to Plaintiff. Indeed, Winges avers that he was not involved with the arbitration agreements at issue and lacks personal knowledge as to the decision to require the arbitration agreements.

While Plaintiff points to the timing of Winges's on-boarding as CEO as conjecture that he must have had some personal knowledge, both the Winges and Fleming Declarations counter that theory. Plaintiff's attempts to discredit those Declarations are insufficient to show that Winges does indeed possess relevant personal knowledge that Plaintiff cannot obtain through other

---

[7] The Court declines to find that Defendants waived the assertion of the apex doctrine as to Winges's deposition in the context of this limited discovery through the entry of the stipulated September 14, 2023 Order regarding limited discovery. At the time of the entry of the Order, there is nothing to indicate that Defendants could not have foreseen that Plaintiff would seek a Rule 30(b)(1) deposition of Winges rather than a deposition of Fleming or a corporate designee pursuant to Rule 30(b)(6). Plaintiff offers no rule or case law to support a finding of waiver in this context.

sources. Although Defendants identified in an Interrogatory response that "all Hilltop executives" were involved in the decision to require HTS employees to sign the arbitration agreements in January 2020, counsel for Defendants and Winges have represented to the Court that Winges specifically was not involved in such a decision. (*See* Doc. No. 40 at p. 6). The interrogatory response is insufficient to show that Winges was specifically involved in the decision. *See Harapeti*, 2021 WL 316391, at *3 (precluding deposition of corporate executive who was not involved in the "granular decisionmaking" at issue and who affirmed that he was not involved in the circumstances subject to discovery). Nor does the fact that Fleming corrected her prior declaration in her more recent declaration as to who HTS required to sign the 2020 arbitration agreements discredit her averments such that the Court should disregard them on the instant Motions. Notably, if Plaintiff was aware of personal interactions with Winges relating to the arbitration agreements at issue to support her theory that Winges must have personal knowledge because he "had direct interaction with" her, (Doc. No. 38-2 at p. 15), Plaintiff could have proffered her own declaration averring as such in response to Defendants' proffered declarations. Yet, she did not.

Moreover, as clarified through the Fleming declarations, Plaintiff could pursue the sought-after discovery through other means. Plaintiff could depose Fleming who has averred twice to having personal knowledge as to the arbitration agreements presented to Plaintiff and the circumstances there-of. The differences in Fleming's declarations and the timing of her transition from Hilltop Holdings, Inc. to HTS do not adequately rebut the showing that Plaintiff could seek the information she seeks through the Winges's deposition from Fleming. And, if Plaintiff is concerned that Fleming may have gaps in her personal knowledge, Plaintiff could seek a deposition of HTS pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Harapeti*,

11

2021 WL 8316391, at *3 (finding plaintiff did not establish that the sought-after information was unavailable through Rule 30(b)(6) deposition or interrogatories). On this record, Plaintiff can seek the discovery as to the arbitrability issues through less burdensome alternatives that do not involve the deposition of Winges.

Accordingly, for those reasons and good cause shown, the apex doctrine precludes Plaintiff from deposing Winges in this limited discovery phase. Should the matter proceed to discovery on the merits, Plaintiff may seek Winges's deposition at that time.

### B. PLAINTIFF'S CROSS-MOTION TO COMPEL FURTHER WRITTEN DISCOVERY RESPONSES

Plaintiff seeks the Court to compel Defendants to provide additional responses to certain Interrogatories and Requests to Produce. Having fully reviewed the requests, responses, and parties' respective arguments, the Court grants Plaintiff's Cross-Motion as to Defendants' Response to Interrogatory Number 4 and denies Plaintiff's Cross-Motion as to the other requests for the following reasons.

Through Interrogatory Number 4, Plaintiff sought Defendants to identify those at HTS who decided to require Plaintiff and other employees to sign an arbitration agreement. (Doc. No. 39-5 at ECF p. 8). In response, Defendants did not assert a specific objection and stated that the decision to require all HTS employees to sign the arbitration agreement "in January 2020 was made by all Hilltop executives, Human Resource leaders, and counsel." (Doc. No. 39-5 at ECF p. 8). While Defendants provided a response, that response is insufficient for Plaintiff to fully ascertain who was involved in the decision-making process, leading in part to the confusion as to whether Winges did participate and have unique personal knowledge of the decision. Indeed, the issue might have resolved if the parties fully met and conferred on this interrogatory. Nevertheless, Defendants should have listed the individuals involved in the decision by name in response to this

interrogatory. Accordingly, the Court GRANTS Plaintiff's Cross-Motion to compel supplementation of Defendants' Response to Interrogatory Number 4.

As to Interrogatory Number 6, although Defendants posed specific objections, they responded by reference to a prior interrogatory response that sufficiently provides the information sought through Interrogatory Number 6. As to Interrogatory Numbers 7, 10, 12, 13, 15, 17, 18, and 19, the Court finds the sought-after information is outside of the scope of the Court's September 14, 2023 Order setting limited discovery. As to Interrogatory Number 11, Defendants sufficiently responded to the request notwithstanding their specific objections. As such, the Court does not find good cause to compel further responses to any of these Interrogatories.

As to Document Request Number 3, Plaintiff seeks documents beyond the scope of what is relevant and proportional to this limited discovery phase. Document Request Numbers 15 and 20 seek documents outside the scope of the Court's order permitting limited discovery. Accordingly, the Court sustains Defendants' objections to these Requests and denies Plaintiff's Cross-Motion to Compel further supplementation.

In her moving brief, Plaintiff states that she seeks the Court to also compel supplementation of Defendants' responses to Interrogatory Numbers 3 and 8 and Document Request Numbers 6, 8-9, and 11-12 as being "material and necessary." (Doc. No. 38-2 at p. 19). However, Plaintiff does not offer any further argument specific to those Interrogatories and Defendants do not address these Interrogatories or Documents Requests in their opposition brief. (*See* Doc. Nos. 38-2 and 40). Accordingly, the Court declines to address these Interrogatories as not sufficient raised.

Plaintiff also raises issues relating to certain electronic discovery sought through some of the Document Requests. (*See* Doc. No. 38-2 at pp. 24-25). However, the parties have not provided the Court with any competing proposed protocols governing electronic discovery—although

Plaintiff indicates she plans to propose one to adverse counsel (*see* Doc. No. 38-2 at p. 24)—and it is not evident the parties fully met and conferred as to what exactly Plaintiff seeks. Indeed, Plaintiff's Cross-Motion is opaque at best as to what she seeks on this issue and the bases for any relief. As such, with the exception of Interrogatory Number 4, Plaintiff has not met her burden of showing good cause to support an order compelling further responses to the Interrogatories and Document Requests, electronic or otherwise.

## IV.   CONCLUSION

Having considered the submissions of the parties, and for the reasons set forth above,

**IT IS, THEREFORE,** on this **30th** day of **September 2024**, hereby

**ORDERED** that the Court **GRANTS** Defendants' Motion for Entry of a Protective Order (Doc. No. 37); and it is further

**ORDERED** that the Court **GRANTS IN PART** Plaintiff's Cross-Motion to Compel (Doc. No. 38) only to the extent it seeks to compel supplementation of Defendants' response to Interrogatory Number 4; and it is further

**ORDERED** that the Court **DENIES IN PART** Plaintiff's Cross-Motion to Compel (Doc. No. 38) to the extent it seeks to compel Winges's deposition and supplementation of responses to Interrogatories Numbered 3, 6-8, 10-13, 15, and 17-19 and Document Requests Numbered 3, 6, 8-9, 11-12, 15, and 20; and it is further

**ORDERED** that the Clerk of Court shall **TERMINATE** the Motions pending at Docket Entry Nos. 37 and 38.

**SO ORDERED.**

_____
RUKHSANAH L. SINGH
UNITED STATES MAGISTRATE JUDGE