**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **LISA PALMERI**, <br><br> Plaintiff, <br><br> v. <br><br> **HILLTOP SECURITIES, INCORPORATED, *et al.*,** <br><br> Defendants. | Civil Action No. 22-05588 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

> **THIS MATTER** comes before the Court upon a renewed Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, *et seq.*, and Dismiss Plaintiff's Second Amended Verified Complaint ("the Motion") filed by Defendants Hilltop Securities Inc. ("HTS") and Brad Winges ("Winges") (collectively, "Defendants").[1]  (ECF No. 74.)  Plaintiff Lisa Palmeri ("Plaintiff") filed a brief in opposition (ECF No. 83), and Defendants filed a reply (ECF No. 84).

> The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** the Motion.

---

[1] Defendant Hilltop Holdings does not join this motion.  It seeks dismissal of the claims against it because it asserts it is an improper party.  (Moving Brief at 29–30, ECF No. 74-1.)

I.      **BACKGROUND AND PROCEDURAL HISTORY**

A.      **FACTUAL HISTORY**[2]

Plaintiff is a licensed securities broker who worked for Defendants for nearly thirty years. (Second Am. Ver. Compl. ¶¶ 30–32, ECF No. 54.)  Plaintiff was the Managing Director of Defendants' Stock Loan Department in Matawan, New Jersey.  (*Id*. ¶ 33.)  In her role, Plaintiff managed approximately seventy accounts, ran a profitable stock loan division, and achieved high-income producing accounts.  (*Id*. ¶¶ 33–34.)  Throughout her career, Plaintiff never had performance issues nor received any customer complaints about her licensing.  (*Id*. ¶ 35.)

In January 2020, Winges became Plaintiff's supervisor.  (*Id*. ¶ 40.)  Shortly thereafter, Winges altered Plaintiff's compensation.  (*Id*. ¶ 41.)  Plaintiff complained about Winges altering her compensation structure, as well as Winges's poor treatment of her to no avail.  (*Id*. ¶ 42.)  Plaintiff alleges that Winges excluded her from meetings, disparaged her performance, ostracized her, and treated male subordinates more favorably.  (*Id*. ¶ 43.)

In August 2021, Winges advised Plaintiff that he again intended to alter her compensation. (*Id*. ¶ 44.)  Plaintiff raised another complaint about Winges.  (*Id*. ¶ 46.)  Around that time, Plaintiff then received an email that HTS intended to hire a new stock loan employee—a job description that matched Plaintiff's—and would offer a referral fee.  (*Id*. ¶ 48.)  Plaintiff alleges she was not consulted and inquired as to why.  (*Id*. ¶ 49.)  On August 18, 2021, Winges invited Plaintiff to have dinner with him and an another HTS employee.  (*Id*. ¶ 47.)  At that dinner, Winges attacked Plaintiff's performance and criticized her for being a poor manager and failing to grow the business, despite a sixty-two percent increase in Plaintiff's performance from the prior year.  (*Id.*

---

[2] The Court accepts the factual allegations in Plaintiff's Second Verified Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

¶¶ 50–52.)  Plaintiff learned that she was being replaced with a "less qualified, younger male." (*Id.* ¶ 53.)  Winges demanded that Plaintiff train her replacement through 2022 and to then separate from HTS thereafter.  (*Id.* ¶ 54.)  Winges also demanded that Plaintiff return from Florida to work full-time in HTS's New Jersey Office.  (*Id.*)  Should Plaintiff fail to comply with these directives, Winges threatened to place an adverse mark on Plaintiff's Form U-4—a required document for certain securities professionals to establish their registration—which Plaintiff alleges he had done to another employee.  (*Id.* ¶¶ 35 n.7, 56–58.)  On August 19, 2021, Plaintiff advised HTS of her "forced" resignation, expressing that Winges made inappropriate statements and bullied Plaintiff.  (*Id.* ¶¶ 60–63).  Following her written complaint and resignation, HTS failed to remedy the conduct about which Plaintiff complained.  (*Id*. ¶ 65.)

## B.    PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") based on sex and age on June 10, 2022.  (Second Am. Ver. Compl. Ex. 1.) Plaintiff thereafter filed the Complaint in the Superior Court of New Jersey, Law Division, Monmouth County on August 12, 2022, and Defendants timely removed this action based on diversity jurisdiction under 28 U.S.C. § 1332 on September 16, 2022.  (*See* ECF No. 1.)[3]

Plaintiff's Second Amended Verified Complaint asserts causes of action for, *inter alia*, sex discrimination based on disparate treatment and hostile work environment based on sex discrimination in violation of New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*  (*See generally* Second Am. Ver. Compl.)

---

[3] Plaintiff's initial Verified Complaint did not have any federal claims.  (*See generally* ECF No. 1-1.)

On October 7, 2022, Defendants filed a Motion to Compel Arbitration.  (ECF No. 5.) Plaintiff filed an opposition, (ECF No. 10), and Defendants filed a reply, (ECF No. 13).  On November 28, 2022, the Court denied the Motion to Compel Arbitration without prejudice and directed the parties to conduct limited discovery because Plaintiff put the arbitration agreement's validity squarely at issue.  *See Palmeri v. Hilltop Secs., Inc.*, Civ. No. 22-5588, 2023 WL 4897048, at *3 (D.N.J. Aug. 1, 2023).  The Court entered an Order confining that discovery to: (1) when Plaintiff signed the arbitration agreement at issue; (2) the circumstances surrounding contract formation; (3) whether Plaintiff executed any other prior agreements with arbitration provisions and the attendant circumstances surrounding the execution of those contracts; (4) and the basis for Plaintiff's allegations of fraud in the inducement or bad faith.  (*See* ECF No. 23.)  Upon completion of that limited discovery, Defendants filed this renewed Motion to Compel Arbitration on July 18, 2025.  (ECF No. 74.)

### C.    THE ARBITRATION AGREEMENT

The Dispute Resolution and Arbitration Agreement ("DRAA") at issue states, in relevant part:

> Any and all Covered Disputes (defined below) with [HTS] . . . shall first be addressed through good faith negotiation.  If the Covered Dispute cannot be settled through negotiation, you and the company waive your respective right to a trial by jury or before a judge in a court of law and agree that the Covered Dispute will be resolved exclusively through final and binding arbitration in accordance with the terms, conditions and procedures of this [DRAA] and the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Procedure . . . .

(Fleming Dec. Ex. 1, ECF No. 74-3 at 8.)

A "Covered Dispute" includes, among other things, "claims related to, or arising out of, the employment relationship," "an allegation that any adverse employment action was based on

4

discrimination or harassment because of your . . . gender . . . [and] age, . . . arising under any federal, state, or municipal statute or regulation (such as, for example . . . the [NJLAD] and [CEPA])," "an allegation that you were constructively discharged, wrongfully terminated, or retaliated against for engaging in protected activity," and "Covered Disputes you have against the Company's officers, directors, employees, agents, parents, subsidiaries, affiliated companies, or successors."  (*Id.*)

Further, at the bottom of the DRAA, it states:

> **BY ACCEPTING ELECTRONICALLY, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND READ THIS [DRAA], AND YOU UNDERSTAND AND AGREE THAT THIS [DRAA] IS A CONDITION OF EMPLOYMENT AND THAT ALL DISPUTES THAT ARE COVERED BY THIS [DRAA] MUST BE SUBMITTED TO ARBITRATION RATHER THAN A JUDGE AND JURY IN COURT AND THAT SUCH MATTERS MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION. BY ACCEPTING ELECTRONGICALLY, YOU FURTHER AGREE TO BE BOUND BY THIS [DRAA].**

(*Id.* at 10) (emphasis in original).

## II.    SUBJECT MATTER JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Counts Two, Four, and Eight of Plaintiff's Second Amended Verified Complaint pleads Title VII violations.  The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and regulating the duty of honor an agreement to arbitrate . . . ." *John Hancock Mut.*

*Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n.32 (1983)).  Section 2 of the FAA provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.  Courts may compel arbitration "upon being satisfied that the making of the agreement for arbitration or failure to comply therewith is not in issue."  9 U.S.C. § 4.  Courts must "rigorously enforce agreements to arbitrate" in accordance with Congress's expressed federal policy favoring arbitration.  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *S. Boward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (explaining that the FAA "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25)).

When deciding whether to compel arbitration, the Court must affirmatively answer the following: (1) whether "there is an agreement to arbitrate"; and (2) whether the "dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).

## IV.    DISCUSSION

### A.    WHETHER A VALID ARBITRATION AGREEMENT EXISTS

Insofar as Plaintiff alleges sexual harassment, the Court must also consider, as a threshold matter, whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of

6

2021 ("EFAA") invalidates the arbitration agreement at issue. *Rosser v. Crothall Healthcare, Inc.*, 744 F. Supp. 3d. 394, 399 (E.D. Pa. 2024); *see also Reynard v. Advantage Behav. Health Servs.*, Civ. No. 23-13436, 2026 WL 280562, at *4 n.4 (D.N.J. Feb. 3, 2026) (explaining that "if a lawsuit relates to a sexual . . . harassment dispute, the EFAA renders unenforceable an arbitration agreement 'with respect to' that entire 'case.'" (quoting *McDermott v. Guaranteed Rate, Inc.*, No. A-0921-24, 2025 WL 3730563, at *12 (N.J. Super. Ct. App. Div. Dec. 26, 2025)).

  1. <u>The EFAA</u>

Defendants argue that the EFAA does not apply for two main reasons: (1) because Plaintiff's claims accrued before the EFAA's effective date and the EFAA does not apply retroactively; and (2) because Plaintiff fails to state a claim for quid pro quo sexual harassment or a hostile work environment because of sex. (Moving Brief at 20–26. ECF No. 74-1.) Plaintiff counters that the EFAA does apply because she filed her complaint for sexual harassment after the date the EFAA was codified into law.[4] (Opp. Brief at 24–25, ECF No. 83.) Plaintiff does not address Defendants' arguments that she fails to state a claim for sexual harassment. Plaintiff also asks the Court to hold, in light of the EFAA's passage, that the FAA no longer preempts Section 12.7 of the NJLAD. (*Id.* at 22–25.)

On March 3, 2022, President Biden signed the EFAA into law. *See* Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402). "The EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant, in sexual assault and sexual harassment cases." *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 245 (3d Cir. 2025). The EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute

---

[4] For the same reasons, Plaintiff argues that FINRA Section 13201 does not require her to arbitrate her claims. (Opp. Brief at 25.)

> or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA has both a timing and a substantive component. *Cornelius*, 133 F.4th at 245. The Court addresses each separately.

> a)      The Timing Component

The EFAA applies to "any dispute or claim that arises or accrues *on or after* the date of enactment." *Id*. (emphasis added) (quoting Pub. L. No. 117-90, 136 Stat. 26, 28); *see also id.* at 245–46, n.8.  In construing the EFAA's timing component, the Third Circuit adopted an organizational approach to which claims accrue and disputes arise. *Id*. at 246. The Third Circuit explained that a dispute is not synonymous with an injury, and that a "'dispute . . . arises' when an employee registers a disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position." *Id*. at 246–47. Another Circuit Court stated that "[t]he relevant question is when the parties became adverse to one another," and that may occur "when an injured party sends the defendant a demand letter, files an administrative charge, requests arbitration, [or] commences a lawsuit . . . ." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025). On the other hand, courts generally recognize that claims accrue when there is an injury—i.e., when an adverse employment action occurs. *See Rosser*, 744 F. Supp. 3d. at 400 (collecting cases). And "[i]n many cases, the dispute will arise after the claim accrues" unless the sexual harassment continues after a dispute is lodged. *Memmer*, 135 F.4th at 409. The Third Circuit acknowledged that "it may not always be easy to tell when an employee first registers disagreement with his or her employer or when an employer disagrees with a position of an employee." *Cornelius*, 133

F.4th at 248 n.9; *accord Memmer*, 135 F.4th at 409 ("Ultimately, when a dispute arises is a fact-dependent inquiry that can be determined in the context of each case.").

Thus, the EFAA will invalidate the DRAA either if Plaintiff's claims accrued or the dispute arose on or after March 3, 2022. Plaintiff alleges she faced adverse employment actions in or around January 2020, when Winges first altered her compensation structure, continuing throughout August 19, 2021, when Plaintiff resigned after Winges informed Plaintiff she would be responsible for training her younger, male replacement. (Second Am. Ver. Compl. ¶¶ 43–67.) Plaintiff also alleges that during that time, she registered complaints about her altered compensation and how Winges treated her with little success. (*See id.*) Assuming, as the Court must, the veracity of Plaintiff's allegations that she suffered a hostile work environment due to sexual harassment and complained about such treatment, it is clear from the pleadings that both Plaintiff's claims accrued and her dispute arose well before March 3, 2022. The EFAA therefore does not preclude arbitration. To confirm that the EFAA is inapplicable here, the Court will separately address the substantive component of the EFAA.

b)    The Substantive Component

A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Courts apply the familiar Rule 12(b)(6) standard to determine whether a plaintiff sufficiently "'alleg[ed] conduct constituting a sexual harassment dispute' pursuant to 9 U.S.C. § 402(a)." *Reynard*, 2026 WL 280562, at *3 (quoting *Michael v. Bravo Brio Rests. LLC*, Civ. No. 23-3691, 2024 WL 2923591, at *4 (D.N.J. June 10, 2024)). Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon with relief can be granted." Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of demonstrating that the non-moving party failed

9

to present a claim. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir 2005). Under Rule 12(b)(6), "the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Id.* (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). While factual allegations need not be detailed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must contain sufficient factual details to be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

Title VII recognizes two theories of sexual harassment—quid pro quo harassment and hostile work environment harassment. *Reynard*, 2026 WL 280562, at *3 (quoting *Michael*, 2024 WL 2923591, at *4). "To succeed on a hostile work environment claim . . . , the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013))

(citation omitted).  New Jersey courts apply a similar framework for hostile work environment claims under the NJLAD.  *See Culter v. Dorn*, 995 A.2d 917, 924 (N.J. 2009); *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005) ("Because the hostile work environment analyses for Title VII claims and NJLAD claims are 'strikingly similar' the Court will analyze both simultaneously." (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)).

Claims of quid pro quo sexual harassment "occur[] when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment" and "involves an implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will lose his or her job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences." *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 454 (N.J. 1993).  Plaintiff does not plead that Defendants required her to submit to sexual demands as a condition of her employment, and therefore, the Court will analyze only whether Plaintiff sufficiently pled a hostile work environment.

Intentional discrimination based on sex "requires a showing of some causal connection between [Plaintiff']s membership in a protected class her alleged mistreatment." *Nardella v. Philadelphia Gas Works*, 621 Fed. Appx. 105, 107 (3d Cir. 2015); *accord Mandel*, 706 F.3d at 167, 169–70; *Lehmann*, 626 A.2d 606.  Here, Plaintiff pleads that Winges's female assistant resigned because of "sexist mistreatment" and that Winges exhibited favoritism towards males by ignoring Plaintiff and her team, not considering Plaintiff for a promotion over male candidates, required Plaintiff to work in-person while allowing some male managers to work remotely, replaced Plaintiff with an external male candidate.  (Second Am. Ver. Compl. ¶¶ 43, 53, 67; Second Am. Ver. Compl. Ex. 1.)  While Plaintiff makes such assertions, she nevertheless omits any allegations that the mistreatment she endured was because of or but for her gender, or

11

motivated by gender animus.  For that reason, Plaintiff fails to plausibly establish intentional discrimination based on sex.

Element two—severe or pervasive discrimination—requires the Court to consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Caver*, 420 F.3d at 262–63 ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").  The work environment must rise to the level of abusive.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).  Here, Plaintiff alleges that: (1) in January 2020 and August 2021, Winges altered her compensation; (2) Winges generally treated her poorly, excluded her from meetings or corporate decision to hire, disparaged her performance for not being a "good manager" or "growing the business," and favored her male colleagues; (3) on August 18, 2021, Winges informed Plaintiff she would be replaced, that she should train her replacement through 2022, and then separate from her employment with HST; and (4) Plaintiff immediately resigned because Winges threatened to mark her Form U-4, defamed her, threatened her livelihood, and unjustifiably bullied her.  (Second Am. Ver. Compl. ¶¶ 40–67.)  Reviewing the pleadings as a whole, the Court finds that Plaintiff has not sufficiently pled severe or pervasive harassment.  The conduct alleged is neither physically threatening nor humiliating.  *Harris*, 510 U.S. at 23.  The comments made about Plaintiff's performance are not severe or suggestive of extremely serious animus towards women.  *See Caver*, 420 F.3d at 262 ("'[O]ffhanded comments, and isolated incidents (unless extremely serious)' are not sufficient."  (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 262 (3d Cir. 2001) (noting harassment under

Title VII might be found in circumstances "where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace."). Plaintiff similarly fails to plead the frequency with which she suffered disparaging comments or exclusion. *Cf. Griffin v. De Lage Landen Fin. Servs., Inc.*, 219 F. App'x 245, 247 (3d Cir. 2007) (exclusion from eight meetings over two-and-a-half years found not severe or pervasive enough to create a hostile work environment); *Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 693 (N.J. Super. Ct. App. Div. 1996) (sexist comments made "once or twice a week" over a one-year period satisfied the severe and pervasive standard). Accordingly, the Court concludes Plaintiff does not plausibly plead severe or pervasive discrimination.

Given that Plaintiff does not meet the pleading standard for intentional discrimination based on sex that is severe or pervasive, the Court need not reach the remaining elements. For the sake of completeness, however, the Court will briefly note that Plaintiff sufficiently alleged she was affected by the harassment insofar as she felt compelled to immediately resign from her position and suffered physical and emotional distress, sleeplessness, stomach and gastric issues, and anxiety due to her work environment. (Second Am. Ver. Compl. ¶ 63, 65). Plaintiff does not plead that a reasonable woman in her position would be similarly affected. *Lehmann*, 626 A.3d at 457–58. Plaintiff does allege that Winges was her supervisor, hired by HTH to be the CEO of HTS, and therefore, Plaintiff sufficiently pleads *respondeat superior* liability. *Mandel*, 706 F.3d at 169 ("The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)).

In sum, the Court concludes that the EFAA does not apply to this action for two independent reasons: (1) assuming Plaintiff plausibly endured sexual harassment, her claims

13

accrued and her dispute arose prior to March 3, 2022; and (2) on the merits, Plaintiff does not state a plausible claim for hostile work environment based on sexual harassment. The Court does not reach the preemption issue.

2.      The DRAA

Defendants argue that the DRAA is valid and enforceable because all employees, including Plaintiff, were required to complete a training module containing the DRAA and take affirmative actions by clicking links to open and review the DRAA, as well as clicking the acknowledgement of the agreement to be bound by the DRAA. (Moving Brief at 14–17.) Defendants further contend that the DRAA expressly stated that the mutual promise to arbitrate and Defendants' promise to not seek fees should it prevail at arbitration constituted consideration, in combination with Plaintiff's continued employment. (*Id*. at 17.) Plaintiff disputes the validity of the DRAA because it neither signed nor dated, Plaintiff was not provided a copy of it, it lacks express language stating that continued employment constitutes assent, Plaintiff could not opt out, and Defendants did not provide Plaintiff with an attorney review period. (Opp. Brief at 14–16.) Plaintiff also argues that she did not knowingly, willingly, and expressly waived her right to the courts because she did not review or remember reviewing the DRAA. (*Id*. at 16–19.)[5]

---

[5] Plaintiff's brief in opposition additionally suggests that the DRAA was a product of fraud in the inducement and bad faith given that Defendants required Plaintiff to complete the DRAA training around the same time that Winges altered her compensation structure and because Defendant's corporate representative for this matter amended her declaration upon the renewed motion. (*See* Opp. Brief at 11–13.) Under New Jersey law, fraud in the inducement is recognized "as an equitable remedy that may serve as the basis for recission of a contract." *Evonik Corp. v. Hercules Grp., Inc.*, Civ. No. 16-7098, 2018 WL 5095991, at *8 (D.N.J. Oct. 18, 2018) (quoting *TekDoc Servs., LLC v. 3i-Infotech Inc.*, Civ. No. 09-6573, 2013 WL 2182565, at *21 (D.N.J. May 20, 2013)). A claim for fraudulent inducement requires: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *Id.* (quoting *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012)). Moreover, bad faith or otherwise unconscionable conduct may serve as a basis to invalidate an arbitration agreement. *Delgado v. BMW Fin. Servs. NA, LLC*, Civ. No. A-0933-22, 2023 WL 5538644, at *4 (N.J. Super. Ct. App. Div. Aug. 29, 2023). Plaintiff, however, does not brief either of these theories. And despite the opportunity for discovery on these discrete issues, (*see* ECF No. 23), Plaintiff's unsupported allegations of fraud or bad faith do not create an issue of material fact as to whether Plaintiff willingly entered into an arbitration agreement. *See Gonzalez v. Secretary of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (cautioning that when "conclusory, self-serving affidavits" are incompatible with record

14

Where, such as here, a party files "a renewed motion to compel arbitration follow[ing] discovery regarding arbitrability, courts resolve the motion by applying the same standard applied to motions for summary judgment under Federal Rule of Civil Procedure 56(a)." *Barclays Servs., LLC v. Ademuwagun*, Civ. No. 23-20798, 2025 WL 2356184, at *3 (D.N.J. Aug. 14, 2025) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013)). Under the Rule 56 standard, a motion to compel arbitration should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," "draw[ing] all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F3d at 772 (first quoting Fed. R. Civ. P. 56(a); then quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)).

Courts apply state contract law when determining whether the arbitration agreement is valid. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). "Under New Jersey law, a 'valid and enforceable' contract has a fixed set of basic ingredients: offer, acceptance, and consideration." *Stabile v. Macy's, Inc.*, 751 F. Supp. 3d 429, 433 (D.N.J. 2024) (citing *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021)). "To manifest assent, 'an offeree must provide unqualified acceptance, which can be express or implied by conduct.'" *Id.* (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)); *see also Skuse v. Pfizer, Inc.*, 236 A.3d 939, 950 (N.J. 2020) ("New Jersey contract law recognizes that in certain circumstances, conduct can constitute contractual assent."). "[I]f parties agree on essential terms and manifest intent to be bound by those terms, they have created an enforceable contract." *Levy v. AT&T Servs.*

---

evidence, they "are insufficient to withstand a motion for summary judgment." (quotation omitted)); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that the party opposing a summary judgment motion under Rule 56(a) "must do more than simply show that there is some metaphysical doubt as to the material facts."). Accordingly, the Court concludes that the record fails to demonstrate any genuine issues of fact as to whether Defendants procured Plaintiff's assent to the DRAA in bad faith or by fraudulent means.

15

*Inc.*, Civ. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (quoting *Crawford v. Compass Grp. USA*, Civ. No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)).

"[A]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 313 (N.J. 2014). The enforceability of an arbitration agreement depends on whether it "clearly" and "unambiguously" puts the parties on notice of their rights and their "intent to surrender those rights." *Noren v. Heartland Payment Sys., Inc.*, 154 A.3d 178, 183 (N.J. Super. Ct. App. Div. 2017). In employment settings, "a valid waiver results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1105 (N.J. 2003).

The Court is satisfied that a valid and enforceable agreement to arbitrate exists.[6] Defendants offered the DRAA for Plaintiff's acceptance on January 20, 2020, and consideration included Plaintiff's continued employment, the mutual promise to arbitrate, and Defendants' agreement to not seek fees if it prevailed at arbitration. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603–04 (3d Cir. 2002) (explaining that the mutual promise to arbitrate constitutes sufficient consideration); *Martindale v. Sandvick, Inc.*, 800 A.2d 872, 878 (N.J. 2002) ("[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support employment-related agreements.").

---

[6] The Court is unpersuaded by Plaintiff's concerns that the DRAA is unenforceable because it did not contain an attorney review provision, an option to "opt out," or language stating that continued employment for a requisite period constituted assent. Failure to include such language in an arbitration agreement does not it render unenforceable. *Cf. Pace v. Hamilton Cove*, 317 A.3d 477, 487 (N.J. 2024) (underscoring New Jersey's freedom to contract). Plaintiff appears to suggest that the DRAA is a contract of adhesion, meaning, "it is presented on a take-it-or-leave-it basis . . . in a standardized printed form, without opportunity for the adhering party to negotiate . . . ." *Uddin v. Sears, Roebuck & Co.*, Civ. No. 13-6504, 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2014) (quoting *Muhammed v. Cty. Bank of Rehoboth Beach Del.*, 912 A.2d 88, 96 (N.J. 2014)). For a court to invalidate a contract of adhesion under New Jersey law, a court must find that contract both procedurally and substantively unconscionable. *Divalerio v. Best Care Lab.*, Civ. No. 20-17268, 2021 WL 4704963, at *4 (D.N.J. Oct. 8, 2021). But Plaintiff does not make any specific argument addressing the unconscionability of the DRAA under New Jersey law.

16

The parties dispute Plaintiff's assent because, among other things, Plaintiff did not sign the DRAA. But "New Jersey law does not require a physical signature for there to be a valid agreement and courts will bind parties to arbitration agreements entered into online, such as via 'clickwrap' agreements." *Falk v. Aetna Life Ins. Co.*, Civ. No. 19-0434, 2019 WL 4143882, at *10 (D.N.J. Aug. 31, 2019). "Clickwrap" agreements are routinely enforced under New Jersey law. *See Santana v. SmileDirectClub, LLC*, 292 A.3d 529, 535 (N.J. Super. Ct. App. Div. 2023). "Clickwrap" agreements "require that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Id.* at 534 (quoting *Skuse*, 236 A.3d at 955 n.2). An offeree will be bound by a clickwrap agreement "if a reasonably prudent user would be on inquiry notice of the terms" even if "there is no evidence that the offeree had actual notice of the terms of the agreement." *Id.* at 535. "[B]y requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." *Id.* (quoting *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)).

The undisputed record demonstrates Plaintiff's assent to the DRAA. On January 21, 2020, HTS sent an automated message to Plaintiff to complete the DRAA training fourteen days from receipt. (Fleming Decl. Ex. 2, ECF No. 75; Fleming Decl. ¶¶ 8–9, ECF No. 74-3.) On two separate slides, the PowerPoint module explicitly and conspicuously instructed the user to "[c]lick here to open and review the [DRAA] before completing the Acknowledgement." (Fleming Decl. Ex. 2.) The Acknowledgement reads:

> I acknowledge that I have received and read the [DRAA]. I understand and agree that the [DRAA] is a condition of employment and that all disputes that are covered by the [DRAA] must be submitted to arbitration rather than to a judge and jury in court, and that such matters must be arbitrated on an individual basis and not as a class, collective, or representative action.

17

> By clicking the box below, I affirm that I knowingly and freely agree
> to be bound by the [DRAA].

(*Id.*)

Next to the Acknowledgement box, it stated "Employee's Signature (checking the checkbox above is equivalent to a handwritten signature." (*Id.*) The final slide instructed the user to click another box stating, "Complete Course" and, thereafter, the user received an automatic email with the "Certificate of Completion," which Plaintiff received on January 27, 2020. (*Id.*; Fleming Decl. Ex. 4, ECF No. 75.) Plaintiff testified that she could not complete the module without clicking each of the links or boxes prompted and had no other reason to believe she did not complete this training. (Plaintiff Dep. Trans. at 89:4–13, 100:2 to 101:20, ECF No. 83-2.) The Court is accordingly satisfied that Plaintiff manifested her intent to be bound by the DRAA and had reasonable notice of its terms.

The Court additionally does not find a genuine issue of material fact merely because Plaintiff failed to recall reading the DRAA or completing the training module at issue. (*See id.* at 87:8–19, 91:3–14, & 93:14–23). In general, the failure to read or recall assenting to a contract will not release a party from the obligations created under the agreement. *See Color St. LLC v. Audere, Inc.*, Civ. No. 22-2267, 2023 WL 7298467, at *7 (D.N.J. Nov. 3, 2023) ("[T]he Court is unconvinced by Plaintiffs' self-serving assertions that 'they do not recall' assenting to or otherwise agreeing to the terms of the [agreements]."); *Saadeh v. T-Mobile USA*, Civ. No. 21-12871, 2022 WL 193968, at *3 n.2 (D.N.J. Jan. 21, 2022) (compelling arbitration, notwithstanding plaintiff's claim that he did "not recall signing any of the contracts [defendant] provided"); *Magee v. Francesca's Holding Corp.*, No. 17-565, 2020 WL 3169518, at *9 (D.N.J. June 15, 2020) (compelling arbitration because "Plaintiffs' mere assertion that no Plaintiff remembers executing

18

the arbitration agreements is insufficient to create a factual dispute."). Because the Court finds that Plaintiff assented to the terms of the DRAA, the Court next assesses its terms.

An arbitration agreement should in a "general and sufficiently broad way" inform employees that they are giving up their right to bring claims in court and "agree[ing] to arbitrate all statutory claims arising out of the employment relationship or its termination." *Atalese*, 99 A.3d at 315–16. "To pass muster . . . a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver." *Garfinkle v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 667 (N.J. 2001).

Upon review, the Court finds that the DRAA is clear and unambiguous. The language is straightforward. The DRAA simply describes a two-step dispute process whereby the aggrieved party shall engage with HTS informally before engaging in binding arbitration. It affirmatively states that the contracting parties waive their access to a court or jury. And the "Covered Disputes" plainly advises the employee of the kinds of claims subsumed by the agreement. Finally, the bold and capitalized waiver provision at the bottom of the DRAA tracks same language as the Acknowledgement statement, putting Plaintiff on notice that she will be assenting to the terms and conditions of the DRAA, waiving her right to the court, and acknowledging that she understood the terms therein.

For these reasons, the DRAA is a valid and enforceable contract.

**B.    WHETHER PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBTIRATION AGREEMENT**

Defendants argue that each of Plaintiff's claims fall within the scope of arbitration. (Moving Brief at 26–27.) Plaintiff does not provide a substantive opposition to that notion.

19

A presumption of arbitrability exists, and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT & T Techs. Inc. v. Comm'n Workers*, 475 U.S. 643, 650 (1986)).  As set forth above, the DRAA provides that any and all "Covered Dispute[s]" are subject to arbitration. (Fleming Dec. Ex. 1).  "Covered Dispute[s]" are "claims related to, or arising out of, the employment relationship . . . , including termination of that relationship," allegations for "adverse employment action . . .  based on discrimination or harassment because of . . . gender . . . [and] age, . . . arising under any federal, state, or municipal statute or regulation (such as, for example . . . the [NJLAD] and [CEPA])," allegations of retaliation for engaging in protected actives, "claims for wages," "any other claim under state, federal or local law," and disputes "against the Company's officers, directors, employees, agents, parents, subsidiaries, affiliated companies, or successors."  (*Id.*)

Here, there is no dispute Plaintiff's claims fall within the scope of arbitration.  Plaintiff's age discrimination for disparate treatment and hostile work environment claims under the NJLAD and Title VII are arbitrable based on the plain text of the DRAA.  Same with Plaintiff's sex discrimination claims for disparate treatment under the NJLAD and Title VII, as well as her claims for retaliation in violation of New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq.*, the NJLAD, and Title VII.  Plaintiff's claims for failure to pay commissions under N.J. Stat. Ann. 34:11-4.7, -4.8, and -56.3 qualify as either a claim related to the employment relationship, for an adverse employment action based on gender arising under state law, for wages, or "any other claim[]" under state law.  Plaintiff's claim for aiding and abetting in violation of the NJLAD constitutes a covered dispute against a Company officer or employee.  And finally, the

*respondeat superior* claims against HTH and HTS are claims against the company's parents or subsidiaries.[7]

Based on the foregoing, each of Plaintiff's claims are subject to arbitration. Having concluded that Defendants' Motion to Compel Arbitration should be granted, the Court will dismiss this action without prejudice because neither party has requested a stay pending arbitration. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (explaining that when a party applies for a stay pending arbitration pursuant to 9 U.S.C. § 3, a court has "no discretion to dismiss a case.").

## V.    **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Compel Arbitration and Dismiss this Action. An appropriate Order will follow.


Date: February 11, 2026


s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[7] Given that the claims against HTH fall within the scope of arbitration, the Court does not address whether HTH is a proper party to this litigation and will leave that issue for the arbitrator.

21